# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| Mantissa Corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:15-cv-01133 |
| v. | § | Judge Keith Ellison |
| | § | |
| Ondot Systems, Inc., Lone Star National Bank, and | § | |
| Lone Star National Bancshares-Texas, Inc. | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

For the reasons discussed herein, Defendants Ondot Systems, Inc. ("Ondot"), Lone Star National Bank, and Lone Star National Bancshares Texas, Inc. ("Defendants") respectfully request that this Court dismiss the Complaint for Patent Infringement (Dkt. 1) ("Complaint") for failure to state a claim upon which relief may be granted.

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ........................................................................ 1

STATEMENT OF RELEVANT FACTS ................................................................. 2

LEGAL STANDARD ............................................................................................ 3

    A.    Standard For A Rule 12(b)(6) Motion .................................................. 3

    B.    Patent Eligibility Is a Question of Law Determined on the Pleadings ................... 4

    C.    The Legal Standard of Patent Eligibility Under 35 U.S.C. § 101 ......................... 5

ARGUMENT ........................................................................................................ 7

I.    THE '456 PATENT CLAIMS PATENT-INELIGIBLE ABSTRACT IDEAS ................ 7

    A.    Independent Claim 1 is Directed to Patent-Ineligible Subject Matter ................... 7

    B.    Independent Claim 2 is Directed to Patent-Ineligible Subject Matter ................. 11

    C.    Independent Claim 4 is Directed To Patent-Ineligible Subject Matter................ 11

    D.    Independent Claim 5 is Directed to Patent-Ineligible Subject Matter ................. 12

    E.    Independent Claims 11 and 15 are Directed to Patent-Ineligible Subject Matter ........................................................................................ 14

    F.    Dependent Claims 3, 6-10, 19, 20, and 24 Are Likewise Patent Ineligible.......... 15

II.    THE '027 PATENT CLAIM PATENT-INELIGBLE ABSTRACT IDEAS ................. 15

    A.    Independent Claim 1 is Directed To Patent-Ineligible Subject Matter................ 15

    B.    Independent Claim 7 is Directed to Patent-Ineligible Subject Matter ................. 17

    C.    Independent Claim 11 is Directed to Patent-Ineligible Subject Matter ............... 17

    D.    Dependent Claims 2-6, 8-10, and 12-29 are Likewise Patent-Ineligible.............. 17

III.    MANTISSA FAILED TO STATE A CLAIM OF INDIRECT INFRINGEMENT......... 18

    A.    Mantissa Failed to State a Claim of Induced Infringement .................................. 18

    B.    Mantissa Failed to State a Claim of Contributory Infringement.......................... 19

CONCLUSION..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013), *cert denied*, 134 S. Ct. 2871 (2014)..................................................................2

*Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307 (Fed. Cir. 2007)................................19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ........................................... *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................3

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 3:14-cv-3942-M, 2015 U.S. Dist. LEXIS 63798 (N.D. Tex. May 15, 2015)...........................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................3

*buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014)................................6, 10, 11

*C.C. Port, Ltd. v. Davis- Penn Mortgage Co.*, 61 F.3d 288 (5th Cir. 1995)........................3

*Celanese Int'l Corp. v. Oxyde Chems., Inc.*, 554 F. Supp. 2d 725 (S.D. Tex. 2008)....................21

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 767 (E.D. Tex. Jan. 21, 2014) ....................................................................7

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005) .............................................................................20

*CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012)................................14

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ........................4, 10

*DealerTrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ....................................................4, 14

*DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 273-274 (S.D.N.Y. July 8, 2014) .............................................................................7

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)....................................................19

*E-Pass Techs., Inc. v. Microsoft, Inc.*, 444 F. Supp. 2d 748 (S.D. Tex. 2006)............................19

*E-Watch Inc. v. Avigilon Corp.*, Civil Action No. H-13-0347, 2013 U.S. Dist. LEXIS 131605 (S.D. Tex. Sept. 16, 2013) ..........................................................19

*Eclipse IP LLC v. McKinley Equipment Corp.*, No. CV 14–154–GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ........................................................6

*Gallier v. Woodbury Fin. Servs.*, Civil Action No. H-14-888, 2015 U.S. Dist. LEXIS 67448 (S.D. Tex. May 26, 2015) ...................................................................4

*Gametek LLC v. Zynga, Inc.*, Nos. CV 13–2546 RS, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014) ...........................................................................................................7

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12–1736–LPS–CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) ...................................................................6

*Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-cv-4252-FSH, 2011 WL 1870591 (D.N.J. May 16, 2011) ...............................................................................7

*Gottschalk v. Benson*, 409 U.S. 63 (1972) ........................................................................5

*Grisham v. United States,* 103 F.3d 24 (5th Cir. 1997) .....................................................3

*In re Bill of Lading*, 681 F.3d 1323 (Fed. Cir. 2012) ......................................................21

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 561 U.S. 593 (2010) ..............................................................................................................................4

*In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333 (Fed. Cir. 2014) .......................................4

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs.*, 76 F. Supp. 3d 513, 516 (D. Del. 2014) ........................................................................................................10

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ...........................20

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) .............10

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005) ................................................................................................19

*MGM Well Servs. v. Mega Lift Sys., LLC*, 505 F. Supp. 2d 359 (S.D. Tex. 2007) .......20

*Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) .........................................................................................6

*PB&J Software, LLC v. Acronis, Inc.*, 897 F. Supp. 2d 815 (E.D. Mo. 2012) ..............21

*Select Retrieval, LLC v. Bulbs.com Inc.*, Civil Action No. 12-10389-TSH, 2012 WL 6045942 (D. Mass. December, 4, 2012) ..............................................................21

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.,* No. 14 C 08053, 2015 U.S. Dist. LEXIS 89628 (N.D. Ill. July 10, 2015) ...........................................................10

*TDE Petroleum Data Sols., Inc. v. AKM Enter.*, Civil Action H-15-1821, 2015 U.S. Dist. LEXIS 121123 (S.D. Tex. Sept. 11, 2015) ..............................................4, 11

*Tuxis Techs., LLC v. Amazon.com, Inc.*, C.A. No. 13-1771-RGA, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3, 2014)...........................................................4, 7

*UbiComm LLC v. Zappos IP, Inc.*, No. 13-cv-01029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013)...........................................................................................5

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)........................4, 11, 12

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) .................19, 20

*Western Falcon, Inc. v. Moore Rod & Pipe, LLC*, Civil Action No. H-13-2963, 2015 U.S. Dist. LEXIS 79296 (S.D. Tex. June 18, 2015) .................................19

## STATUTES

35 U.S.C. § 101 ..............................................................................................2, 4, 5, 6, 7, 8, 10, 11, 18

35 U.S.C. § 271(b) .........................................................................................................19

35 U.S.C. § 271(c) .........................................................................................................21

## RULES

Rule 12(b)(6)...........................................................................................................3, 4, 5, 6, 7

Rule 12(c)...................................................................................................................6, 7, 10

## SUMMARY OF THE ARGUMENT

Defendants move for dismissal on two grounds:

*First*, the patents-in-suit[1] claim subject matter that is unpatentable under the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("*Alice*").  In short, the patents-in-suit include various claims each directed to one of two abstract ideas:  The first abstract idea entails setting a default for permitted uses of an identity associated with an account, temporarily departing from the default for permitted uses, using the identity, and returning to the default state.  The second abstract idea pertains to using information to: determine the circumstances under which an identity can be used, request use of the identity, and determine whether to permit use of the identity.

The patents-in-suit implement these abstract ideas with conventional computer hardware and software constructs.  They add nothing of substance to the underlying abstract idea and are therefore ineligible for patent protection.  Since *Alice*, this District and other courts around the country have invalidated patents, like those of the patents-in-suit, which claim abstract ideas.  Courts have done so at the pleading stage to avoid unnecessary patent litigation.  The Court should do the same in this case.

*Second*, the Complaint consists of legally deficient threadbare patent infringement allegations.  In particular, Mantissa accuses Defendants of inducing infringement, but fails to allege that Defendants had the requisite intent to cause unidentified third parties to directly infringe the patents-in-suit.  Mantissa also alleges contributory infringement, but fails to provide any factual basis to create a plausible inference that Mantissa is entitled to relief.

---

[1] As used herein, "patents-in-suit" collectively refers to U.S. Patent No. 7,779,456 (the "'456 Patent") and U.S. Patent No. 8,353,027 (the "'027 Patent").  The '456 Patent is attached as Exhibit A to the Complaint while the '027 Patent is attached to the Complaint as Exhibit B.

In sum, and as further explained below, Mantissa should never have brought this defective patent lawsuit.  The Complaint should be dismissed with prejudice.

### STATEMENT OF RELEVANT FACTS

Ondot is a small company from San Jose, California.  The idea for the company came about because the founders had been victimized by credit card and debit card fraud.  Ondot's founders were frustrated that the financial services industry lacked sufficient mechanisms for guarding against fraudulent activity.  Ondot realized that a key component to combatting fraud was to enable end-users to directly identify circumstances under which their credit or debit card could not be used.  For example, someone using Ondot's software could indicate that all debit card transactions outside of the Houston area should be declined.  Ondot worked tirelessly to develop, from the ground-up, its software based on its own internally developed intellectual property.   Lone Star is an early adopter of Ondot's technology.

On April 29, 2015, Mantissa Corporation ("Mantissa") sued Defendants for alleged infringement of the patents-in-suit.  The two patents-in-suit are related to one another.  The '027 Patent is a continuation of the '456 Patent and thus shares a common specification.  The '456 Patent has twenty nine claims, including six independent claims (*i.e.*, Claims 1, 2, 4, 5, 11, and 15).  The '027 Patent has twenty nine claims, including three independent claims (*i.e.*, Claims 1, 7, and 11).  As described the introduction sections of the patents-in-suit, both patents relate generally to the field of "protection of the identity of an entity by placing limitations or conditions on its uses."  Importantly, the patents-in-suit issued ***prior*** to the Supreme Court's seminal *Alice* decision and, thus, were not examined under the more exacting standard for patent eligibility that the law now requires.

While Mantissa accuses Defendants of direct, induced, and contributory infringement of the patents-in-suit, Complaint at ¶¶ 1-15, the Complaint fails to specify any claims of the patents-in-suit that Defendants allegedly infringe.

## LEGAL STANDARD

### A.    Standard For A Rule 12(b)(6) Motion

The purpose of Rule 12(b)(6) is to test the legal sufficiency of the claims advanced in the complaint.  *See Grisham v. United States,* 103 F.3d 24, 25-26 (5th Cir. 1997).  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  The Supreme Court has held that, to survive a motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Dismissal is required where the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted) (internal quotation marks omitted).  "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper.  *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.,* 61 F.3d 288, 289 (5th Cir. 1995); *see also Twombly*, 550 U.S. at 558 (complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief").  "To withstand a Rule 12(b)(6) motion, a complaint must allege more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Gallier v. Woodbury Fin. Servs.*, Civil Action No. H-14-888, 2015 U.S. Dist. LEXIS 67448 at *8 (S.D. Tex. May 26, 2015) (internal quotation marks omitted).

### B.    Patent Eligibility Is a Question of Law Determined on the Pleadings

Whether a claim recites patent-eligible subject matter is a question of law and a threshold inquiry because there exists no set of facts upon which the plaintiff could plausibly state a claim for relief.  Stated differently, "Section 101 patent eligibility is a question of law."  *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014)).  *See also DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011); *see also In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 561 U.S. 593 (2010).  Thus, a court may find patent claims to be patent ineligible at the pleading stage.  *See Tuxis Techs., LLC v. Amazon.com, Inc*., C.A. No. 13-1771-RGA, 2014 U.S. Dist. LEXIS 122457, at *1 (D. Del. Sept. 3, 2014) (granting Rule 12(b)(6) motion).

Indeed, in *Ultramercial, Inc. v. Hulu, LLC*, the Federal Circuit not only affirmed a finding of non-patentability at the pleading stage, but also extolled upon the virtues of bringing a meritorious Section 101 challenge early in the case as a "threshold question."  772 F.3d 709, 717, 720-24 (Fed. Cir. 2014) (Mayer, J., concurring) ("First, whether claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation.").

Consistent with the Federal Circuit's approach, this District and other courts have dismissed complaints for patent infringement upon finding that the asserted patent does not meet the patent eligibility requirements of Section 101.  *See TDE Petroleum Data Sols., Inc. v. AKM Enter*., Civil Action H-15-1821, 2015 U.S. Dist. LEXIS 121123 at *18 (S.D. Tex. Sept. 11, 2015) (granting motion to dismiss upon determination of patent invalidity ); *see also, e.g.*,

*UbiComm LLC v. Zappos IP, Inc.*, No. 13-cv-01029-RGA, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (granting motion to dismiss under 12(b)(6) over Plaintiff's objections that the "lack of an evidentiary record, together with the application of the strong presumption of patentability to claimed subject matter and the high bar required by Rule 12(b)(6) by themselves provide ample justification for denying Defendant's Motion.").

### C.   The Legal Standard of Patent Eligibility Under 35 U.S.C. § 101

The categories of patent-eligible subject matter are set forth in 35 U.S.C. § 101.  The Supreme Court has, however, recognized "three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'"  *Bilski*, 561 U.S. at 601.  These judicially-created exceptions embody "the longstanding rule that '[a]n idea of itself is not patentable,'" *Alice,* 134 S. Ct. at 2355 (*quoting Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)), and "are consistent with the notion that a patentable process must be 'new and useful.'" *Bilski*, 561 U.S. at 601-602.

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the Supreme Court confirmed that software patents claiming no more than "abstract ideas" are not patent-eligible because "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2352, 2356–60.  To assess patent-eligibility, the Supreme Court formulated a two-part test:

**First**, a court must determine whether claims are drawn to a patent ineligible concept, such as laws of nature, natural phenomena, or abstract ideas.  *Alice*, 134 S. Ct. at 2355.

**Second**, upon determining that a software patent claims an abstract idea, the court must determine whether the claim elements, both "individually and as an ordered combination," nonetheless "transform the nature of the claim[s]" into a patent-eligible application.  *Id.*  In that

-5-

case, the Supreme Court held that "[t]aking the claim elements separately, the function performed by the computer at each step of the process is [p]urely conventional" and "[s]imply *appending conventional steps,* specified at a high level of generality. . . [is] *not enough to supply the inventive concept.*"  *Alice*, S. Ct. at 2357, 2359 (internal quotations omitted) (emphasis added).

Post-*Alice*, courts around the country have come to similar conclusions regarding patents that claim abstract ideas, disposing of infringement suits on motions to dismiss where, as here, the patent is plainly directed to non-patentable subject matter.  *See, e.g.*, *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (*aff'g buySAFE, Inc. v. Google Inc.*, 964 F. Supp. 2d 331 (D. Del. 2013)) (dismissing patent infringement complaint based on a Rule 12(c) motion on the pleadings on § 101 grounds.); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at *1-3 (N.D. Cal. Sept. 19, 2014) (dismissing patent infringement complaint on a Rule 12(b)(6) motion on § 101 grounds because the "claims are directed to a very simple abstract marketing idea that uses generic computer and Internet technology, and contain no additional inventive concept."); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. CV 14–154–GW(AJWx), 2014 WL 4407592, at *1, 7, 12 (C.D. Cal. Sept. 4, 2014) (dismissing patent infringement complaint on a Rule 12(b)(6) motion on § 101 grounds because the "claims are directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else"); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12–1736–LPS–CJB, 2014 WL 4379587, at *1 (D. Del. Sept. 3, 2014) (recommending granting Rule 12(b)(6) motion to dismiss on § 101 grounds); *Tuxis Techs.*, 2014 U.S. Dist. LEXIS 122457, at *7, 16 (dismissing patent infringement complaint for failure to state a claim because "the evidence is clear and convincing that [the

claim] is directed towards an unpatentable abstract idea" of "upselling"); *Gametek LLC v. Zynga, Inc.*, Nos. CV 13–2546 RS, 2014 WL 1665090, at *1 (N.D. Cal. Apr. 25, 2014) (granting Rule 12(c) motion for judgment on the pleadings because the patent was directed to the abstract idea of "the offer and sale of items to players in the course of gaming"); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 767 (E.D. Tex. Jan. 21, 2014) (granting Rule 12(c) motion for judgment on the pleadings because the claim was "directed to the ineligible abstract idea of inventory-based selling without meaningful limitations."); *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252, 2011 WL 1870591, at *1, 4 (D.N.J. May 16, 2011) (dismissing patent infringement complaint for failure to state a claim because claims covering a "system for processing information" on a programmed computer were directed to an "abstract idea" and thus unpatentable under § 101); *cf. DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 273-274 (S.D.N.Y. July 8, 2014) (granting "motions for summary judgment, which could equally validly have been styled motions for judgment on the pleadings" that the asserted patent "claims the abstract idea of meal planning, and thus is invalid under § 101").

## ARGUMENT

## I.     THE '456 PATENT CLAIMS PATENT-INELIGIBLE ABSTRACT IDEAS

### A.     Independent Claim 1 is Directed to Patent-Ineligible Subject Matter

Claim 1 recites:

A method of protecting use of an entity's identity, the method being executed on electronic computer hardware in combination with software, the method comprising:

>    setting a status of the identity to a first state, the first state defining a scope of permitted use of the identity;

>    changing, in advance of an intended use of the identity, the status to a second state defining a scope of permitted use of the identity that is different from the first state;

> requesting use of the identity after said changing; and returning, after said requesting, the state back to the first state;
>
> wherein the first state is a default state, and said returning occurs in response to completion of a use of the identity;
>
> wherein said requesting comprises transmitting, from a user of said identity to a service provider which maintains the state, a request for authorization to use the identity, where information in the request is insufficient to authorize the use of the identity;
>
> wherein said setting, changing, requesting and returning are executed on electronic computer hardware in combination with software.

Claim 1 is directed to the abstract idea of temporary departure from normal uses of an identity and adds nothing more than applying this abstract idea to generic computer software and hardware through several steps.  As indicated above, these steps include:  (1) **setting** the default state that permits certain uses in connection with a user identity, (2) **changing to** a second state that allows for different uses of the identity prior to the intended use, and (3) **requesting and returning** to the default state after the completion of the second state.

The abstract idea encompassed by Claim 1 is indeed so broad that it covers routine and long-standing banking practices.  An example is temporarily raising one's credit card limit. More specifically, credit cards typically have a limit, which is the maximum amount the card issuer has authorized the account holder to charge each month.  In other words, a credit card inherently "**set[s]** the default state that permits certain uses in connection with a user identity."  In anticipation of a major purchase (e.g., buying an engagement ring) an account holder can ask the credit card company to temporarily raise his/her credit limit through personal visit to the bank or phone call to the bank.   This corresponds to "**changing to** a second state that allows for different uses of the identity prior to the intended use".  After the major purchase, the account holder may inform the bank and the credit limit will revert to its previous limit.  This equates to "**requesting**

**and returning** to the default state after the completion of the second state"). This straightforward reading of Claim 1 suffices to convey the abstract nature of claim 1.

When faced with similar business method patents relating to financial transactions, courts around the country have repeatedly invalidated the patents. *See, e.g., buySAFE,* 765 F.3d at 1355 (affirming district court's grant of judgment on the pleadings because the method for "guaranteeing a party's performance of its online transaction" is not patent eligible); *CyberSource*, 654 F.3d at 1376-1377 (finding a fraud detection method unpatentable "as the method consists of only the general approach of obtaining information about credit card transactions utilizing an Internet address and then using that information in some undefined manner to determine if the credit card transaction is valid."); *Smart Sys. Innovations, LLC v. Chi. Transit Auth.,* No. 14 C 08053, 2015 U.S. Dist. LEXIS 89628, at *13 (N.D. Ill. July 10, 2015) (dismissing patent infringement complaint based on a Rule 12(c) motion on the pleadings on § 101 grounds because "the patents [there] really only cover an abstract concept: paying for a subway or bus ride with a credit card."); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs.,* 76 F. Supp. 3d 513, 516 (D. Del. 2014) (granting defendant's motion for summary judgment of invalidity because the patent is "directed to an apparatus and a method for the real-time authorization, notification and/or security of financial transactions involving credit cards, charge cards, debit cards, and/or currency or 'smart' cards that enable a cardholder to monitor, in real-time, all activity involving his or her card(s) and the corresponding account numbers.").

Turning to the second step in patent eligibility test of *Alice*, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 715 (citing *Mayo Collaborative Servs.*

*v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012)).  "The introduction of a computer into the claims does not alter the analysis at [] step two."  *Alice*, 134 S. Ct. at 2357.

Claim 1 fails to meet the requirement because akin to the generic computer implementation in *Alice*, claim 1 recites generic electronics elements—"electronic computer hardware" and "software"—that were well-known and purely conventional.  For example, "electronic computer hardware" is so generic that this term is not defined or even used in the specification.  The '456 patent further explains that the generic "software" includes examples such as a generic "a client side application."  '456 patent at 1:9.  This unremarkable and conventional function of computer have consistently been found insufficient to meet the threshold requirement of § 101.  *See, e.g., buySAFE*, 765 F.3d at 1355; see also *Ultramercial*, 772 F.3d at 717 (holding that "adding a computer to otherwise conventional steps does not make an invention patent-eligible.").

As in *Alice*, Claim 1 does not "purport to improve the functioning of the computer itself. . . . Nor do[es] [it] effect an improvement in any other technology or technical field."  *Id*. at 2359.  Rather, Claim 1 of the '456 patent relies on generic electronics to perform routine, conventional tasks as part of an abstract method of data communication.  *Id*.; *See also BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 3:14-cv-3942-M, 2015 U.S. Dist. LEXIS 63798 at *25 (N.D. Tex. May 15, 2015) ("Although some claims may recite various computer hardware elements, such claims will not be patent eligible if directed at nothing more than performance of an abstract business practice on the Internet or using a conventional computer.") (Internal quotation marks omitted).  Likewise, this Court has recently held that a patent was unable to pass the muster of the second prong of *Alice* because "specific machines are not required and that a

-10-

'general purpose processor' may be used." *TDE Petroleum Data Sols*, 2015 U.S. Dist. LEXIS 121123, at *18.

In summary, Claim 1 is invalid because it claims the abstract idea of temporary departure from normal uses of an identity and fails to transform that abstract idea into a patent eligible application.

### B.     Independent Claim 2 is Directed to Patent-Ineligible Subject Matter

Claim 2 is substantively the same as Claim 1.  The only distinction is the trigger of returning to the default state.  More specifically, while under Claim 1 the returning "occurs in response to completion of a use of the identity," the returning under Claim 2 "occurs in response to a predetermined number of uses of the identity, an elapse of a predetermined time after a predetermined event, or the earlier of the onset of the predetermined number of transactions and the predetermined time after the predetermined event."

Although encompassing more triggers for returning to the default state, Claim 2 purports to cover the same basic concept of temporary departure from normal uses of an identity and is therefore also directed to patent-ineligible subject matter.

Regarding the second step in patent eligibility test of *Alice*, the elements of Claim 2 cannot transform the claimed abstract idea into a patent-eligible application.  For element "electronic computer hardware in combination with software," as previously discussed, it is a generic computer implementation and therefore provides no inventive concept. *See Ultramercial*, 772 F.3d at 717 ("[T]he transfer of content between computers is merely what computers do and does not change the analysis.").  Accordingly, independent Claim 2 is likewise patent ineligible.

### C.     Independent Claim 4 is Directed To Patent-Ineligible Subject Matter

Claim 4 is substantively identical to Claim 1 except that Claim 5 lists specific embodiments of the use of the identity:

"Wherein the use of the identity comprises use of a credit card, debit card, check card, financial institution account number, brokerage account number, or other instrument provided by an account holder of record"

Therefore, Claim 4 similarly covers an impermissibly abstract idea.  Claim 4 also fails the second step of *Alice*'s patent eligibility test.  Again, adding these specific examples cannot take Claim 4 out of the abstract idea as elaborated under Claim 1.  As previously discussed, the element "electronic computer hardware in combination with software" is a generic computer implementation and therefore provides no inventive concept.  Accordingly, independent Claim 4 is likewise patent ineligible.

### D.    Independent Claim 5 is Directed to Patent-Ineligible Subject Matter

Claim 5 reads as follows:

A method of protecting use of an entity's identity, the method being executed on electronic computer hardware in combination with software, the method comprising:

attempting to use an identity at a source;

forwarding first information relating to said use to a user affiliated with the source location;

forwarding second information from the user to a service provider, the second information being different from the first information;

determining, by the service provider, whether said use of the identity is consistent with at least one pre-registered condition; and

sending, from the service provider to the user, a decision based on the determining;

wherein the second information is insufficient in and of itself to authorize any related use of the identity;

wherein the at least one pre-registered condition defines at least one circumstance under which the identity can be used.

In other words, Claim 5 purports to cover the abstract idea of using information to: determine the circumstances under which an identity can be used, request use of the identity, and determine whether to permit use of the identity.

The abstract idea encompassed by Claim 5 broadly encompasses routine practices, including depositing a check at a bank.  As an example, an account holder has a savings account that allows for depositing checks (i.e. "**registering** circumstances under which an identity can be used"), she must provide both her credit card and drivers' license for identification (i.e. "**forwarding** to a service provider two different sets of information to request a use of the identity"), and the bank will then determine whether the requested check deposit is consistent with its permitted activities (i.e. "**determining**, by the service provider, whether to permit such use based on the pre-registered circumstances").  Accordingly, Claim 5 is so abstract that it would preempt conventional financial transactions such as cash deposit.

Moreover, courts have repeatedly invalidated patents that claim computerized steps of receipt, forwarding, and verification of information.  For example, in *Dealertrack*, the Federal Circuit stated that a claim directed specifically to receipt, verification, and selective forwarding of credit application data to "remote funding sources" was patent-ineligible because it could essentially be reduced to "receiving data from one source (step A), selectively forwarding the data (step B, performed according to step D), and forwarding reply data to the first source (step C)." *DealerTrack*, 674 F.3d at 1333.  Similarly, in *CyberFone Systems, LLC v. Cellco Partnership*, the court found that a method claim comprising "obtaining data transaction data information," transforming this data into a plurality of data sets with destination identifiers, sending the data sets to the identified destinations, and relaying response information to "a second set of said destinations" was patent-ineligible because "the abstract nature of plaintiff's

patent is plainly apparent.  The patent, broken down into its component parts, recites steps by which data is obtained, sorted and stored."  *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 719 (D. Del. 2012).

Claim 5 also fails to pass the muster of the second step of the *Alice* analysis.  Again, the element "electronic computer hardware in combination with software" is a generic computer implementation and therefore provides no inventive concept.  Consequently, independent Claim 5 is simply a computerized version of a classic financial transaction and therefore patent ineligible.

**E.     Independent Claims 11 and 15 are Directed to Patent-Ineligible Subject Matter**

Claims 11 and 15 are substantively identical to Claim 5.  Like Claim 5, Claims 11 and 15 are directed to the abstract idea of using information to determine whether or not to use an identity with conventional computational instrument.  As explained above with respect to Claim 5, this is an abstract idea under the first step of the *Alice* decision's patent eligibility test.  The additional elements contained in Claims 11 and 15 are insufficient to bring the two claims out of the realm of impermissible abstractness.  In particular, Claim 11 merely assigns functions to the parties involved: the user would set the identification information parameters and the service provider would store information provided by the entity.  Similarly, Claim 15 merely rewrites Claim 5 such that the first identification information is already stored at a service provider instead of being forwarded to a user affiliated with the source location upon an attempt to use an identity.   Hence, Claims 11 and 15 also fail the second step of *Alice*'s patent eligibility test for the same reasons that Claim 5 fails.

### F.      Dependent Claims 3, 6-10, 19, 20, and 24 Are Likewise Patent Ineligible

The dependent claims of the '456 Patent merely add elements that contain more specificity, but represent the same abstract idea.  For instance, Claim 20 limits the use of first state, and Claim 24 specifies that the entity must at least be one individual.

With respect to independent Claims 2 and 4, dependent Claims 3, 25,and 26 add no inventive element with the claimed specificity.  For instance, Claim 25, like Claim 24, merely specifies that the entity must at least be one individual.

In a similar vein, as to independent Claim 5, Claims 6 through 10 only provide some examples of the embodiments of the elements contained in Claim 5.  For instance, Claim 6 lists some examples of "one pre-registered condition," and Claims 7, 8, and 9 simply relevant sectors such as banking, health-care, lending, and security.

Similarly, independent Claims 11 and 15 were merely expounded upon by dependent Claims 12, 13, 14, 16, 17, 18, 28, and 29, which fail to transform any Claims into a patentable innovation.

In summary, the claims of the '456 Patent are invalid because they claim the abstract ideas of (1) temporary departure from normal uses of an identity and (2) using information to determine whether or not to use an identity, but fail to transform that abstract idea into a patent eligible application.

## II.      THE '027 PATENT CLAIM PATENT-INELIGBLE ABSTRACT IDEAS

### A.      Independent Claim 1 is Directed To Patent-Ineligible Subject Matter

Claim 1 reads as follows:

1. A method of protecting use of an entity's identity when the entity attempts to use the identity, the method being executed on electronic computer hardware in combination with software, the method comprising:

> receiving, at a service provider, information regarding the attempted use of the entity's identity, the information being insufficient in and of itself to execute the attempted use of the identity;
>
> determining, at the service provider, whether the attempted use of the entity's identity is consistent With at least one pre-registered condition;
>
> sending, from the service provider, a decision based on the determining;
>
> wherein the at least one pre-registered condition defines at least one circumstance under which the identity can be used; and
>
> wherein the service provider lacks sufficient data to execute the attempted use of the identity.

Claim 1 of the '027 Patent, which is representative of independent Claims 7 and 11, closely tracks Claim 5 of the '456 Patent. Like Claims 5, 11, and 15 of the '456 Patent, the '027 Patent is directed to the concept of using information to determine whether or not to use an identity in conjunction with conventional computer implementation. As explained above with respect to the '456 Patent, this is an abstract idea under the first step of the *Alice* decision's patent eligibility test. Indeed, Claim 1 of the '027 Patent is even broader than Claim 5 of the '456 Patent. Unlike Claim 5 of the '456 Patent that claims two separates of information that are needed to make a determination of a use of an identity, Claim 1 of the '027 Patent refers to information generally.

Claim 1 of the '027 Patent also fails the second step of *Alice*'s patent eligibility test for the same reasons that the '456 Patent fails. In particular, Claim 1 of the '027 Patent recites the same generic computer implementation: "electronic computer hardware in combination with software." The law is clear that "[s]imply appending conventional steps [like generic computing equipment] specified at a high level of generality, [is] not '*enough*' to supply an inventive concept." *Alice*, 134 S. Ct. at 2357  (emphasis in original)). Consequently, Claim 1 fails under the second step of *Alice*'s patent eligibility test.

**B.** **Independent Claim 7 is Directed to Patent-Ineligible Subject Matter**

Independent Claim 7 of the '027 Patent merely repeats independent Claim 11 while replacing "user" with "third parties other than the service provider, the entity and authorized agents" as the party that does not have direct access to information.  Minor wording changes cannot add an inventive step.  Thus, the same arguments regarding the unpatentability of independent Claim 11 of the '456 Patent also apply to independent Claim 7 of the '027.  Additionally, Claim 7 also fails under the second step of *Alice* analysis with the same generic computer implementation: "electronic computer hardware in combination with software."

**C.** **Independent Claim 11 is Directed to Patent-Ineligible Subject Matter**

Claim 11 of the '027 Patent closely resembles Claim 15 of the '456 Patent and merely adds two elements that are already inherent in the claim:  "transmitting information consistent with the result of the determining" and "the service provider lacks sufficient information to execute the attempted use of the identity."  Thus, Claim 11 of the '027 Patent, just like Claim 15 of the '456 Patent, is directed to an abstract idea.  It similarly does not survive the second step of *Alice* analysis given the same generic computer implementation: "electronic computer hardware in combination with software."

**D.** **Dependent Claims 2-6, 8-10, and 12-29 are Likewise Patent-Ineligible**

Akin to the dependent claims of the '456 Patent, the dependent claims of the '027 Patent also merely provide some specifications with respect to the independent claims. and therefore cannot transform the '027 Patent into a patent eligible invention. For instance, Claims 18, 19, and 20 merely specify the entity as at least one individual. As a further example, Claims 27, 28, and 29 only mention that "the service provider is independent from and remote from the entity."

## III.    MANTISSA FAILED TO STATE A CLAIM OF INDIRECT INFRINGEMENT

### A.    Mantissa Failed to State a Claim of Induced Infringement

This District recently held that "[t]o succeed on an induced-infringement claim under §

271(b), a plaintiff must prove by a preponderance of evidence that (1) there has been direct

infringement and (2) the defendants knowingly induced infringement and possessed specific

intent to encourage their customers' infringement." *Western Falcon, Inc. v. Moore Rod & Pipe,*

*LLC*, Civil Action No. H-13-2963, 2015 U.S. Dist. LEXIS 79296 at *20 (S.D. Tex. June 18,

2015) (*citing Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007));

*see also E-Pass Techs., Inc. v. Microsoft, Inc.*, 444 F. Supp. 2d 748 (S.D. Tex. 2006) (*quoting*

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378

(Fed. Cir. 2005); *E-Watch Inc. v. Avigilon Corp.*, Civil Action No. H-13-0347, 2013 U.S. Dist.

LEXIS 131605 at *4-5 (S.D. Tex. Sept. 16, 2013); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581

F.3d 1317, 1328 (Fed. Cir. 2009) (*citing DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05

(Fed. Cir. 2006)).

For each of the patents-in-suit, Mantissa alleges that "Defendants have induced, and

continue to induce, infringement of the [patents-in-suit] by making, using, offering to sell and

selling products, systems and services embodying the patented invention.  By placing the

infringing debit and/or credit card control, monitoring, and management products in software for

which there is not a substantially non-infringing use,  Defendants induce infringement of, at a

minimum the method claims on the part of a third party."  Complaint, ¶¶ 20, 28.

In other words, Mantissa does not even allege all the elements of induced infringement.

Indeed, Mantissa does not allege that Defendants have ever obtained the specific intent to

encourage another's infringement. Mantissa has therefore failed to state any claim for induced

infringement.  Nor does Mantissa identify the alleged direct infringer.  Mantissa also fails to

allege how the Defendants have induced the unidentified direct infringers to infringe.  The Court should dismiss those allegations for failure to state a claim.

### B.        Mantissa Failed to State a Claim of Contributory Infringement

Courts in this District has previously held that a claim for contributory infringement requires the plaintiff to show: (1) that there was direct infringement by a third-party; (2) that the defendant knew the combination for which the components were made was patented and infringed; and (3) that the defendant's accused products are material to the infringing activity and have no substantial non-infringing use.  *See MGM Well Servs. v. Mega Lift Sys., LLC*, 505 F. Supp. 2d 359, 365-366 (S.D. Tex. 2007); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) ("In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses.'") (*quoting Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)); *Vita-Mix Corp.*, 581 F.3d at 1327 (finding that plaintiff must show defendant sells "an apparatus for use in practicing a patented method, knowing it to be 'especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use'" (alterations in original) (*quoting* 35 U.S.C. § 271(c)).

Mantissa has failed to adhere to this pleading requirement.  In particular, for each of the patents-in-suit, Mantissa alleges that "Defendants have committed, and continue to commit acts of contributory infringement of the [patent-in-suit], including but not limited to, by making, using, offering to sell and selling products, systems and services embodying the patented invention.  By placing the infringing debit and/or credit card control, monitoring, and

management products for which there is not a substantially non-infringing use in software, Defendants contribute to infringement on the part of third parties."  Complaint, ¶¶ 21, 29.

That is, Mantissa has merely re-hashed the elements of contributory infringement, but failed to allege any facts to make those allegations plausible.  The Complaint includes no facts sufficient to support the required knowledge of the patent or its infringement before the lawsuit. While the Complaint alleges that Mantissa sent a letter to Ondot on September 13, 2014, ¶ 14, Mantissa failed to allege that the letter puts the mental state of Ondot beyond notice to knowledge of the patent or its infringement.  *See Celanese Int'l Corp. v. Oxyde Chems., Inc.*, 554 F. Supp. 2d 725, 729 (S.D. Tex. 2008) (finding that plaintiff failed to "present evidence that raises a genuine issue of material fact regarding Defendant's alleged knowledge" with a written notice because "[a]ctual knowledge is sufficient for notice, but notice may not necessarily constitute knowledge").  The Complaint does not even allege that Lone Star had knowledge of the patent-in-suit prior to being served with the Complaint.

Additionally, Mantissa failed to plead any facts showing that Defendants' products have no substantial non-infringing use.  *See PB&J Software, LLC v. Acronis, Inc.*, 897 F. Supp. 2d 815, 820 (E.D. Mo. 2012) (dismissing contributory infringement claims where plaintiff failed to "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses" (*quoting In re Bill of Lading*, 681 F.3d 1323, 1337 (Fed. Cir. 2012)); *Select Retrieval, LLC v. Bulbs.com Inc.*, Civil Action No. 12-10389-TSH, 2012 WL 6045942 at *3 (D. Mass. December, 4, 2012) (dismissing contributory infringement claim where the complaint alleged that the defendant's accused products and services "have no substantial non- infringing uses" and defendant provided such products and services to customers "whose use of such services and products constitutes direct infringement of the [asserted patent].").

Because Mantissa failed to plead any facts supporting two of the requisite elements, its contributory infringement allegations cannot survive a motion to dismiss.

## **CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted because the patents-in-suit claim patent ineligible patent matter or, in the alternative, that the Court dismiss the insufficiently plead indirect patent infringement allegations.

Dated:  October 23, 2015                           Respectfully Submitted,


                                                   By: _/s/  Ryan R. Smith_____

                                                   Ryan R. Smith (*pro hac vice*)
                                                   Wilson Sonsini Goodrich & Rosati
                                                   Palo Alto, CA  94304
                                                   Tel:  650.493.9300
                                                   Fax:  650.493.6811
                                                   rsmith@wsgr.com

                                                   *Counsel for Defendants Ondot Systems, Inc.,*
                                                   *Lone Star National Bank, And Lone Star*
                                                   *National Bancshares Texas, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means:

Daniel P Mullarkey
Novak Druce Connolly Bove Quigg LLP
1875 Eye Street NW, 11th Floor
Washington, DC 20006
daniel.mullarkey@novakdruce.com

James Allen Glenn , Jr
Novak Druce Connolly Bove Quigg LLP
1000 Louisiana Street, 53rd Floor
Houston, TX  77002
james.glenn@novakdruce.com

By: */s/  Ryan R. Smith*

Ryan R. Smith (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati
Palo Alto, CA  94304
Tel:  650.493.9300
Fax:  650.493.6811
rsmith@wsgr.com

*Counsel for Defendants Ondot Systems, Inc.,
Lone Star National Bank, And Lone Star
National Bancshares Texas, Inc.*

-22-